IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM E. BECKHAM, )
)
Plaintiff )
)
)  Civil Action No. 1:06-CV-01920
v. )
)
NATIONAL RAILROAD PASSENGER )
CORPORATION )
)
and )
)
MARYLAND TRANSIT ADMINISTRATION )
)
Defendants. )

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION OF DEFENDANT MARYLAND TRANSIT
ADMINISTRATION TO DISMISS FOR IMPROPER VENUE
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE
AND IN OPPOSITION TO ITS MOTION TO
EXTEND TIME TO RESPOND TO THE COMPLAINT

I.   **INTRODUCTION**

Plaintiff William E. Beckham filed a Complaint against The National Railroad Passenger Corporation ("Amtrak"), headquartered in the District of Columbia, and the Maryland Transit Administration ("MTA"), which operates trains into and out of the District of Columbia. In accordance with an Agreement with MTA, Amtrak operates the MARC Penn Line train out of Union Station on which Mr. Beckham regularly commutes

from his job in the District of Columbia and on which he has been subjected to racially discriminatory behavior. (Complaint, ¶ 7). In particular, Mr. Beckham challenges racially discriminatory conduct of at least two Amtrak employees attributable, in part, to Amtrak's failure to provide its employees adequate training in enforcing the carrier's rules and in dealing with its passengers on a nondiscriminatory basis.

MTA, but not Amtrak, seeks dismissal of Plaintiff's suit for improper venue under 28 U.S.C. § 139(b)(2) on the ground that the alleged misconduct purportedly occurred entirely in Maryland. (MTA Mtn., ¶ 4).[1] Alternatively, MTA requests transfer of venue under 28 U.S.C. § 1404(a) on the grounds that Plaintiff's choice of forum allegedly is not entitled to deference because the District of Columbia is not his home forum; that the requested transfer will serve the interests of justice because the transferee court allegedly has greater familiarity with the governing laws; and that the District of Columbia allegedly has "neither meaningful ties to this controversy nor a particular interest in the parties or subject matter." (MTA Mtn., ¶¶ 4, 5). Finally, the MTA, joined by Amtrak, requests an extension of time within which to file a response to the Complaint from December 4 or 5, 2006 until an indeterminate date "at least" thirty days after this Court rules on the venue motion or the action is transferred, whichever is later. Id. at ¶ 9.

As shown below, venue is proper under 28 U.S.C. § 139(b)(1) because the two defendants "reside" in the District of Columbia and because in any event they are alleged

---

[1] Amtrak, which, as noted, has its headquarters in the District of Columbia and has retained Virginia counsel, presumably would prefer to litigate in its home forum despite its acquiescence in MTA's venue motion. See Amtrak's December 4, 2006 Response to MTA's Motion.

joint tortfeasors, and establishing venue over one tortfeasor (Amtrak) establishes venue over the other (MTA). Alternatively, venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the "events or omissions" giving rise to Plaintiff's claims occurred in the District of Columbia.

As also shown below, the MTA plainly has failed to justify its transfer request under 28 U.S.C. § 1404(a), which authorizes transfer of a civil action to an appropriate alternative district "for the convenience of parties and witnesses in the interest of justice." Before a transfer is ordered, however, the balance of convenience and public interest must be strongly in favor of the moving party in order to overcome the normal deference accorded plaintiffs' choice of forum. See generally Wright & Miller, Federal Practice and Procedure: Civil 3d § 3849, citing Gross v. Owen, 221 F.2d 94, 95 (D.C. Cir. 1955).

MTA at least tacitly concedes that convenience factors weigh neither for nor against transfer. In addition, the public interest consideration cited by the MTA, i.e., the transferee court's asserted greater familiarity with governing law, similarly does not cut in favor of transfer. Indeed, Plaintiff's claims principally raise issues under federal constitutional and statutory law with which federal courts presumably are equally familiar. Accordingly, MTA's transfer request must be denied.

## II. ARGUMENT

### A. Venue Is Proper In The District Of Columbia Under 28 U.S.C. § 1391(b)(1) and (b)(2)

#### 1. Section 1391(b)(1)

Section 1391(b)(1) of the general federal venue statute provides that venue is proper in a judicial district "where any defendant resides, if all defendants reside in the same State." Section 1391(b) (1) does not define "reside," but a corporate defendant is deemed to "reside" in "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." See § 1391(c).

No apparent reason exists to treat an instrumentality of a state government differently for purposes of determining its residence. Indeed, Congress typically does not intend a different meaning to attach to a word that appears repeatedly within a single section of a statute. Thus, if a corporation "resides" in a district in which it is subject to personal jurisdiction, so too should a non-corporate defendant, at least absent evidence of a contrary legislative purpose.

Amtrak, a corporation subject to personal jurisdiction in the District of Columbia, obviously resides in the chosen forum. MTA, which provides passenger rail and bus service into and out of the District of Columbia, also is subject to personal jurisdiction, and therefore "resides," in the chosen forum. Accordingly, venue is proper in the District of Columbia under 28 U.S.C. § 1391(b)(1).

Venue is proper in the District of Columbia under § 1391(b)(1) for an independent reason. Plaintiff challenges conduct by Amtrak and MTA as joint tortfeasors with

overlapping responsibilities in the operation of the MARC Penn Line train out of Union Station on which he regularly commutes from his job in the District of Columbia and on which he has been subjected to racially discriminatory practices.[2]

MTA does not dispute that Plaintiff was free to bring suit against Amtrak in the District of Columbia. Plaintiff submits that venue therefore also properly lies in the District of Columbia against MTA as an alleged co-conspirator or joint tortfeasor regardless of whether MTA independently "resides" in the forum district. See, e.g., Washington Pub. Utils Group v. United States District Court for the W. Dist. Of Wash., 843 F.2d 319, 328 (9th Cir. 1987) (articulating the co-conspirator venue theory); SEC v. National Student Mktg. Corp., 360 F. Supp. 284, 291 (D.D.C. 1973) (accord).[3] In other words, establishing venue over one conspirator or tortfeasor in the district also establishes venue over co-conspirators or joint tortfeasors, even if venue otherwise would not properly lie.

### 2.   Section 1391(b)(2)

Under § 1391(b)(2), venue is proper in a judicial district in which a "substantial part of the events or omissions giving rise to the claim occurred ...," **even if** a greater part of the events occurred elsewhere. National Council on Comp. Ins. v. Caro & Graifman, 259 F. Supp. 2d 172, 177 (D. Conn. 2003); see also Sussman v. Bank of Israel, 56 F.3d

---

[2]   (Complaint, ¶ 8). In considering a motion to dismiss for improper venue, the court must accept as true well-pled factual allegations in plaintiff's Complaint. E.g., 2215 Fifth St. Assocs. V. U-Haul Int'l., Inc., 148 F. Supp. 2d 50, 54 (D.D.C. 2001).

[3]   Although the co-conspiracy venue theory was articulated in the context of securities fraud, its rationale applies equally to non-securities conspiracy claims and claims against joint tortfeasors.

450, 457 (2d Cir. 1995) (plaintiff has no obligation to file in the most convenient forum, only in a proper forum).

Contrary to MTA's mistaken view, a significant part of the "events or omissions" giving rise to Plaintiff's claims occurred in the District of Columbia. See Freeman v. Fallin, 254 F. Supp. 2d 52, 57 (D.D.C. 2003) (finding venue proper because a substantial part of the events giving rise to plaintiffs' Fourth Amendment conspiracy claims, i.e., discussions regarding the design and implementation of drug tests, occurred in the District of Columbia even though the tests were administered elsewhere). This case is not simply about two employees of Amtrak discriminating against Plaintiff on account of his race, but about a systemic failure on Amtrak's part to provide adequate sensitivity and other training to its employees -- an abdication of responsibility that allowed the complained-of conduct to take place in the first instance. MTA's assertions that the alleged misconduct occurred entirely in Maryland, and that Amtrak's location in the District of Columbia is a mere fortuity unconnected to the litigation, reflects a misunderstanding or distortion of Plaintiff's Complaint. (MTA Mtn., ¶4).

> **B. MTA Has Fallen Far Short Of Meeting Its Burden Of Proving That Considerations Of Convenience And The Interest Of Justice Weigh Heavily In Favor Of Transfer**
>
> **1. Applicable principles**

District courts have discretionary authority under 28 U.S.C. § 1404(a) to transfer a civil action to an alternative district in which plaintiff originally could have initiated the action if considerations of convenience and the interest of justice weigh heavily in favor of transfer. E.g., Stewart Org., Inc. v. Rich Corp., 487 U.S. 22, 27 (1988). Plaintiff's

choice of forum, however, is entitled to substantial deference and may not be lightly disturbed. Croesus EMTR Master Fund v. Federative Republic, 212 F. Supp. 2d 30, 38 (D.D.C. 2002) (underscoring "the presumption against disturbing plaintiffs' initial forum choice..."); Trout Unlimited v. Dep't. of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996) (moving party bears burden of establishing that transfer is proper); Pain v. United Technologies Corp., 637 F.2d 775, 784 (D.C. Cir. 1980) (moving party "bear[s] a heavy burden of establishing that plaintiffs' choice of forum is inappropriate").[4] As shown below, the MTA has fallen far short of meeting its considerable burden of justifying transfer under § 1404(a).[5]

The considerations of convenience weighed by courts in disposing of transfer requests under § 1404(a) include, in addition to the parties' choice of forum, (1) the convenience of parties; (2) the convenience of witnesses, "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"; (3) the district in which the claims arose; and (4) the ease of access to sources of proof. Schmidt v.

---

[4] See also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981) (underscoring the ordinarily strong presumption in favor of plaintiff's choice of forum, which may be overcome "only when the private and public interest factors clearly point towards trial in the alternative forum"); Jamara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (plaintiff's choice of forum should not be lightly disturbed).

[5] Citing Brannen v. National R.R. Passenger Corp., 403 F. Supp.2d 89, 93 (D.D.C. 2005), MTA argues that "substantially less deference" is due when the chosen forum is not plaintiff's home forum. (MTA Mtn., ¶ 7). In Brannen, however, the plaintiff's chosen forum did not have a meaningful connection to the controversy. 403 F. Supp. 2d at 93 ("Because the District of Columbia is not the plaintiff's home forum **and** lacks meaningful ties to the controversy, the court affords little deference to the plaintiff's choice of forum") (emphasis added). As shown previously, Mr. Beckham's preferred forum has very significant ties to the controversy; accordingly, Brannen is of no help to the MTA.

American Institute of Physics, 322 F. Supp. 2d 28, 31-32 (D.D.C. 2004). The MTA focuses its attention on the first two factors, arguing simply that the convenience of parties and witnesses would not be "adversely affected" by a transfer, which, of course, is scarcely a reason to order a transfer. See Schmidt v. American Institute of Physics, 322 F. Supp. 2d at 34 (noting that the District of Columbia and the District of Maryland lie "in close proximity" and therefore the factor of convenience of parties and witnesses "weighs neither for nor against transfer").[6]

Public-interest factors considered by courts in evaluating transfer requests include (1) the relative familiarity of the transferor and transferee courts with governing law, (2) the relative congestion of the two courts and (3) the local interest in deciding local controversies at home. Id. at 35. MTA relies on the first factor,[7] mistakenly contending that a federal district court in Maryland would be more familiar with governing law than this Court. MTA's contention rests on a misreading of Plaintiff's Complaint, which principally alleges violations of federal constitutional and statutory law with which the two federal courts presumably are equally familiar.

Moreover, although Plaintiff's false detention claim may be decided under Maryland common law, his negligent training and supervision claims, at least against

---

[6] Neither of the last two private-interest factors identified by Schmidt militates in favor of transfer. As shown elsewhere, Plaintiff's claims are linked in significant ways to the District of Columbia. And, given the close proximity of the two courts, access to sources of proof weighs neither for nor against transfer. The MTA does not contend otherwise.

[7] MTA does not contend that the proposed transferee court's docket is less congested than this Court's docket. Nor does MTA seriously contend that Maryland has a greater interest in the dispute than the District of Columbia.

Amtrak, will be governed by District of Columbia law. Perhaps more important, MTA has not argued, much less shown, that the relevant common law of Maryland and the District of Columbia differ in significant respects. Accordingly, transfer is not supported by the transferee court's greater familiarity with governing law.

In light of the foregoing, MTA plainly has not met its burden of showing that considerations of convenience and the interest of justice overcome the deference to which Plaintiff's choice of forum is entitled. Accordingly, MTA's request to transfer this action to the District of Maryland must be denied.

### C. Defendants' Open-Ended Request For An Extension Of Time Within Which To Respond To Plaintiff's Complaint Should Be Denied

As noted previously, MTA and Amtrak request an extension of time to respond to Plaintiff's Complaint until "at least" thirty days after this Court rules on MTA's venue motion or after the requested transfer is completed, "whichever is later." Defendants offer no explanation or justification at all for their request, which presumably is driven simply by a desire to delay the litigation.

Responsive pleadings were due on December 4 or 5, 2006. Although Plaintiff is not opposed to a reasonable extension of time to a date certain, he vigorously opposes defendants' unsupported, open-ended request.

## CONCLUSION

For the reasons stated, Plaintiff requests that MTA's motion to dismiss or transfer venue be denied and that its motion to extend time similarly be denied.

Respectfully submitted,

**LAW OFFICES OF STEVEN C. KAHN**

By: _____/s/_____

Steven C. Kahn
5028 Wisconsin Avenue, N.W.
Suite 300
Washington, DC  20016
(202) 537-6789

**CONNOLLY, RODGERS & SCHARMAN, LLC**

By: _____/s/_____

Clifford Scharman
5028 Wisconsin Avenue, N.W.
Suite 300
Washington, DC  20016
(202) 537-6789

Attorneys for Plaintiff

Date: December 8, 2006